OPINION
BROTMAN, District Judge.
Presently before the court is the motion of defendants Ford New Holland, Inc., and Sperry Corporation (“the New Holland defendants”) to dismiss plaintiff New Jersey Department of Environmental Protection’s (“DEP”) claims against them for lack of subject matter jurisdiction. DEP alleges that those defendants generated toxic waste dumped at a Gloucester Township, New Jersey, landfill. Although the thrust of the New Holland defendants’ argument is that DEP cannot bring its state law claims against them in federal court, their motion requires the court to examine whether it has subject matter jurisdiction *328 over the entire case. DEP initially brought this action in state court, and a defendant impleaded the United States Environmental Protection Agency (“EPA”), which removed the action to this court. After dismissing EPA from the case, the court chose to maintain jurisdiction over DEP’s ancillary state law claims. The New Holland defendants claim that DEP asserted state law claims against it at a time when all of DEP’s claims against all defendants were purely state law claims and that there can be no pendent party jurisdiction in such a situation. For the reasons set forth below, the court finds that it does have jurisdiction over this action and that the exceptional circumstances of this case allow for pendent party jurisdiction over the New Holland defendants. The court will therefore deny their motion to dismiss.
I. FACTS AND PROCEDURAL BACKGROUND
A. The Landfill and the State Court Litigation
This lawsuit involves the sixty-acre Gloucester Environmental Management Services, Inc. (“GEMS”) landfill owned by the Township of Gloucester and operated by Amadei Sand & Gravel, Inc., and GEMS, and others between the late 1950s and 1980 when the state of New Jersey ordered its closure. While in operation the landfill received municipal and industrial liquid and solid waste from hundreds of sources, and that waste included dangerous amounts of toxic materials.
In 1980 DEP filed this lawsuit in the Superior Court of New Jersey, Chancery Division, Camden County, seeking proper closure of the landfill, recovery of response costs, and penalties. As DEP learned the extent of contamination in the landfill, it amended its complaint to join additional parties it believed were responsible for dumping hazardous wastes at the site and to add additional legal grounds for relief. By the end of 1982, DEP had filed three amended complaints in Superior Court asserting several causes of action against the owners and operators of the landfill under the New Jersey Spill Compensation and Control Act (“the Spill Act”), N.J.Stat.Ann. §§ 58:10-23.11 to 58:10-23.33 (West 1982); the Solid Waste Management Act, id. §§ 13:1E-1 to 13:lE-48 (West 1979); the Sanitary Landfill Facility Closure and Contingency Fund Act, id. §§ 13:1E-100 to 13:1E-198 (West Supp.1989); the Water Pollution Control Act, id. §§ 58:10A-1 to 58:10A-20; Id. § 23:5-28 (West 1940 & Supp.1989); as well as claims based on common law nuisance, negligence, and strict liability. By early 1984, the parties to the state court suit by direct and third-party claims included the owners and operators of the landfill, several parties that allegedly generated the toxic materials dumped at the site, and several parties that allegedly transported those materials to the site.
Early in 1983 EPA became involved in the effort to remedy the landfill. In that year EPA listed the GEMS landfill on its national priority list of hazardous waste sites needing remediation. It now ranks twelfth on that list. EPA joined forces with DEP pursuant to section 104 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (“CERCLA”), 42 U.S.C. §§ 9601-9657 (1982), and hired a firm to conduct a feasibility study at the site. In 1985, after a public comment period, EPA issued a Record of Decision selecting a remedy for the landfill. The remedy to be performed included installation of a cap on top of the landfill and a clay and soil cover on its sides; construction of an active gas collection and treatment system; construction of a groundwater pumping and treatment system; connection of certain homes to the public water supply system; relocation of Holly Run; and remediation of Holly Run and Briar Lake. EPA and DEP later divided the remedy into two phases: Phase one included capping the landfill and building a gas collection and treatment system, and phase two included building a groundwater pumping and treatment system and decontaminating Holly Run and Briar Lake.
B. Impleader, Removal and Early Proceedings in This Court
In late 1983 the Township of Gloucester filed an amended third-party complaint in *329 Superior Court naming EPA as a third-party defendant. That pleading amended the Township’s third-party complaint to state:
27(a). The E.P.A., [sic] is an agency of the United States authorized under Federal Statutes to perform remedial measures at duly designated waste disposal sites;
152. The E.P.A. has an interest in this matter, which would necessarily be affected by resolution of this case in that it seeks the same or similar relief as does plaintiff, D.E.P.
153. The E.P.A.’s refusal to join in this action as a plaintiff exposes the Township of Gloucester to the possibility of inconsistent or multiple obligations by reasons of E.P.A.’s claimed interest.
In January 1984 EPA filed a verified petition for removal in this court. That petition stated, “This action is a Civil action commenced in a state Court over which the United States District Court has original jurisdiction, and therefore may be removed to this court pursuant to 28 U.S.C. § 1441(a) et seq.”
Following removal to this court, EPA moved for dismissal on the ground that the complaint failed to state a claim upon which relief could be granted. The court granted the motion and dismissed the agency from the case because it found that sovereign immunity barred the lawsuit. New Jersey Dep’t of Envtl. Protection v. Gloucester Envtl. Management Servs., Inc., Civil Action No. 84-152, slip op. (D.N.J. Aug. 1, 1984). The court then raised on its own motion the question of whether it could maintain subject matter jurisdiction over the case without EPA as a party. After requesting further briefing and after carefully considering the issue, the court determined that it could and should retain jurisdiction over the case in its entirety. New Jersey Dep’t of Envtl. Protection v. Gloucester Envtl. Management Servs., Inc., Civil Action No. 84-152, letter op. (D.N.J. June 5, 1985).
In finding continued federal jurisdiction, this court first held that EPA properly removed the action to federal court. Although EPA’s removal petition cited the entire removal chapter, the court focused its attention on a single provision permitting removal of any action against
Any officer of the United States or any agency thereof or person acting under him, for any act under color of such office or on account of any such right, title, or authority claimed under any act of Congress for the apprehension or punishment of criminals or the collection of revenue.
28 U.S.C. § 1442(a)(1); see letter op. at 5-6. The court further held that section 1442(a)(1) authorizes removal of an entire case even though the agency seeking removal was involved in only one discrete part of the case. Letter op. at 6 (citing IMFC Professional Servs. v. Latin Am. Home Health, Inc., 676 F.2d 152, 158-59 (5th Cir.1982)). The court went on to find that it had the power to maintain jurisdiction over the case after it dismissed EPA. Id. at 7. Finally, the court found that it should exercise its discretion to retain jurisdiction over the case:
This case involves, inter alia, a determination of responsibility for and cleanup of toxic wastes, a pressing national issue which is most acute in New Jersey. It is vital that these actions proceed expeditiously in order to protect the public welfare and to preserve the public trust and confidence. By retaining jurisdiction now, the court hopes to avoid creating a litigation “merry-go-round” of waste and delay when, on remand, federal claims are asserted and/or federal parties joined, leading once again to removal to this court.
Id. at 7-8.
In the same opinion in which the court announced that it would maintain jurisdiction over this case, it granted the Township of Gloucester’s motion to file an amended counterclaim, crossclaim, and third-party complaint to state several federal causes of action. Id. at 8-9. Those causes of action arise under section 107 of CERCLA, 42 U.S.C. § 9607, section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a), and section 7002 of the Resource Conservation and Re *330 covery Act, 42 U.S.C. § 6972. Letter op. at 9. The court further noted that its jurisdiction under CERCLA is exclusive and found that “[njothing in the record suggests that the court lacks pendent jurisdiction over the state law claims asserted herein.” Id. (citing United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)).
C. Managing the Litigation
DEP’s third amended complaint filed in Superior Court, which was the pleading in effect when EPA removed the case to this court, named only the landfill owners and operators as defendants. Although this group of actual defendants numbered only six, these defendants named numerous alleged generators and transporters of the toxic wastes dumped at the GEMS site as third-party defendants. Consequently, the task of managing the litigation was quite difficult from the start. Hon. Jerome B. Simandle, U.S. Magistrate, took responsibility for holding a series of case management conferences to ease the transaction costs and burdens of involvement in a case with so many parties and to attempt to negotiate a settlement. The result of Judge Simandle’s efforts was a series of case management orders ultimately structuring the defendants into six distinct groups and altering the usual rules of service and joinder. In addition, Judge Simandle’s orders have limited and organized discovery and motion practice.
Case Management Order No. 1 created a defendants’ committee, granted DEP leave to file an amended complaint naming additional parties, ordered that upon filing of a third-party complaint by one defendant it shall be deemed filed by all defendants against the named third-party defendant, and ordered that all cross-claims and counterclaims by new third-party defendants shall be deemed to have been made, filed, served, and denied without the necessity of formal pleading. Case Management Order No. 2 divided the defendants’ committee into five groups: DEP, the owners, the alleged operators, the alleged generators, and the alleged transporters. The order named liaison counsel for each group and defined the duties for such counsel. The order also altered the usual rules for motion practice by extending the time in which responsive pleadings must be served. Judge Simandle subsequently issued a third and a fourth management order, and in March 1988 issued Case Management Order No. 5, which consolidated the provisions of the previous orders.
Case Management Order No. 5 created a new group of defendants, the municipalities, whom the generator defendants would shortly join in this action as third-parly defendants charged with dumping toxic waste at the GEMS site. At the time of this order, the direct and indirect defendants in the case numbered more than three hundred. The order repeated the provisions already in place about automatic joinder of third-party complaints and automatic assertions and denials of cross-claims. In addition, this order provided that all answers filed in this action, both before and after the date of the order, will be deemed to include cross-claims for indemnity and contribution made by the answering party against all other direct or indirect defendants (except to the extent that an indemnity or contribution claim arises out of facts specific to a particular party). Subsequent to issuing Case Management Order No. 5, Judge Simandle has held further case management conferences and has issued four further case management orders.
Judge Simandle’s contribution to managing this lawsuit has been nothing less than phenomenal. He has spent hundreds of hours working with liaison counsel and many of the hundreds of parties those counsel represent in an attempt to render order on this lawsuit and to reach a settlement agreement. The inch-thick stack of case management orders represents only a small portion of the work he and others have put into this litigation. The docket provides some indication of the effort that has gone into this case. Today it contains thirty-six pages of entries, and those entries number more than 800. Managing this case has been no easy task, and only through patience, diligence, and skill of *331 those involved — including court personnel, the several liaison counsel, and other counsel — has the management effort thus far been a success.
D. Administrative Developments, Constitutional Challenges, and Amended Pleadings
DEP sought to force potentially responsible parties to clean up the landfill both through this lawsuit and through a series of administrative directives issued pursuant to the Spill Act. These directives ordered potentially responsible parties to complete specified cleanup work. The recipients of the first two Spill Act directives raised constitutional challenges to them, but the court never had an opportunity to address those challenges. The challenges became moot because some of the potentially responsible parties satisfied the directives and because DEP agreed to file an amended complaint joining in this litigation all recipients of the Spill Act directives. In October 1986 DEP filed its fourth amended complaint, which named as defendants more than fifty additional alleged generators and transporters of the hazardous wastes dumped at the GEMS site.
In May 1987 DEP issued a third Spill Act directive naming more than ninety allegedly responsible parties and ordering them to pay close to $1.6 million for the design of the remedy DEP and EPA selected for the landfill. That directive named parties not included in the previous directives or in DEP’s fourth amended complaint. The New Holland defendants were among the potentially responsible parties named in this new directive. Many of the parties named in the new directive challenged that administrative order on the ground that it violated their federal constitutional rights to due process and equal protection. The generator defendants raised these challenges as part of this lawsuit, and they sought a temporary restraining order. In addition, the operators and another group each filed new lawsuits raising similar constitutional challenges, Amadei Sand & Gravel, Inc. v. New Jersey Dep’t of Envtl. Protection, Civil Action No. 87-3086, and ICI Americas Inc. v. New Jersey Dep’t of Envtl. Protection, Civil Action No. 87-3110. The court also received a letter from the Ford New Holland defendants stating that, although they were not then defendants in this lawsuit, they would like any relief granted to the defendant generators also to be granted to parties like themselves who were named as respondents to the third Spill Act directive but who were not named as defendants in this case. The court adjourned without date the parties’ applications for a temporary restraining order. The court consolidated the new filings with this action and set a briefing schedule for the parties’ challenges. The court heard oral argument in December 1987. However, for several reasons, including progress of settlement talks and the pend-ency of the instant motion, the court has yet to rule on these applications.
In August 1988 DEP issued its fourth Spill Act directive ordering the respondents to begin to perform the first phase of remedial action at the GEMS landfill site in the immediate future. At the same time, serious settlement negotiations were ongoing before Judge Simandle in an attempt to raise the funds necessary for the defendants to hire a private contractor to complete the selected remedy. Such a contractor agreed to undertake phase one of the remedy (essentially involving capping the landfill and building a gas collection system) for $32.5 million plus cost overruns. Under the terms of the fourth directive and the Spill Act, if the parties failed to meet that directive’s deadline for beginning work DEP could engage its own contractor through public bidding and seek treble costs from the respondents. In cooperation with the defendants, DEP postponed the compliance deadline month after month until it announced that November 30, 1988, was the final deadline.
Just prior to November 30th several defendants met with Judge Simandle and DEP and attempted to negotiate an extension of the deadline while they raised approximately ten million dollars more to reach their $32.5 million goal. DEP refused and instead told the parties that it intended to seek bids for the cleanup job. *332 On November 30th several defendants came before the court seeking a temporary restraining order raising essentially the same challenges they raised to the third directive. They also sought relief against EPA, which had issued administrative orders pursuant to section 106 of CERCLA paralleling the DEP directives. The court heard oral argument on the application for injunctive relief. In the course of oral argument a group of defendants asked to speak with the court in chambers, and the court agreed to do so. Based on representations made by the defendants in chambers and based on the court’s promise to assist in settlement discussions, DEP reluctantly agreed not to seek bids for at least another week, and EPA indicated that it was not likely to seek penalties for noncompliance. The court therefore continued the motion for a temporary restraining order.
E. Phase One Settlement
After November 30th the court took an active role in settlement negotiations. Liaison counsel, through a participation system worked out among the parties, had developed a scheme for grouping settling parties within each group of defendants in tiers according to their perceived level of responsibility. As a result, counsel had a method of allocating the cost of the private remedy among the settling parties. Throughout December and much of January, the court directed those defendants not previously participating in settlement discussions to appear before it to explain their position to the court and to liaison counsel. On several days there were more than one hundred parties, their counsel, and representatives of their insurance carriers in the courthouse. The result of the court’s enormous effort to reach out to many of the recalcitrant parties was a success. By the end of January the settling parties met their $32.5 million goal. After further negotiation with DEP over the wording of an administrative consent order, the parties to the settlement all signed the order and placed the money raised into a trust fund. In addition, the court signed an order making the administrative consent order an order of this court. Work has now begun on the phase one remedy, and the parties are now beginning to strive toward an accord for completion of the phase two remedy.
F. The New Holland Defendants’ Motion to Dismiss for Lack of Subject Matter Jurisdiction
In April 1988 the New Holland defendants filed a motion to dismiss DEP’s claims against them for lack of subject matter jurisdiction. They claimed that DEP named them as defendants for the first time in this action in its fifth amended complaint, filed in December 1987. They argue that that complaint states no basis for this court’s subject matter jurisdiction and that it does not allege any federal cause of action. Moreover, they note that there is no basis for the court to exercise jurisdiction based on diversity of citizenship. Finally, they argue that the court lacks pendent party jurisdiction over the state law claim against them, especially because they were added as pendent parties after the original basis for the court’s jurisdiction over this case — the presence of EPA — ceased to exist. DEP has responded to the motion by asserting that pendent party jurisdiction is appropriate under the unique circumstances of this case. In addition, several liaison counsel representing the defendants other than the New Holland group filed briefs urging that the court can and should maintain jurisdiction over newly added parties. The court held oral argument on June 17, 1989. The New Holland defendants cited in their reply brief for the first time Lovell Mfg. v. Export-Import Bank of the U.S., 843 F.2d 725 (3d Cir.1988). Because that case called into doubt whether this court ever had jurisdiction over this litigation, the court directed the parties to submit supplemental briefs addressing the case.
The New Holland defendants’ motion was fully briefed in November 1988. However, as the court prepared to address the motion, settlement discussions became increasingly productive and the possibility of settlement became a very real one. The settlement process taxed heavily the court’s resources. Although there was *333 only very limited hope that a settlement could be of such a nature as to obviate the court’s need to pass on this motion, that possibility kept the court from reaching it. Now that the court has signed an order incorporating the phase one settlement into an order of this court, it feels compelled to address the New Holland defendants’ arguments and to accept their invitation to revisit its earlier holdings that EPA properly removed the case to this court and that the court can retain jurisdiction.
II. DISCUSSION
The New Holland defendants’ motion focuses on whether the court has subject matter jurisdiction over the claims against them. Nonetheless, their reply brief calls into question whether the court ever had subject matter jurisdiction over this case. Consequently, the court will first address whether it has subject matter jurisdiction over nay part of this lawsuit by determining whether it properly retained jurisdiction after dismissing EPA as a third-party defendant. The court will then address whether it has subject matter jurisdiction over parties like the New Holland defendants whom DEP brought into this lawsuit after the court dismissed EPA.
A. The Court Had Subject Matter Jurisdiction Over This Action After it Dismissed EPA
1. Removal Was Proper
In 1984 this court found that EPA properly removed this action pursuant to 28 U.S.C. § 1442(a)(1). Last year in Lovell Mfg. v. Export-Import Bank of the U.S., 843 F.2d 725 (3d Cir.1988), the Third Circuit ruled that section 1442(a)(1) allows removal of an action against either an officer of the United States or an officer of a federal agency, but that it does not allow removal of an action against the United States or a federal agency. Id. at 733. The appeals court explained, “it is clear to us that a fair reading of the statute only allows officers, and not agencies, to remove cases to federal court.” Id. It continued, “we cannot read a statute to say what it does not say, and we think it plain from the punctuation of the sentence and the use and placement of the word ‘him’ that this statute merely allows removal by ‘any officer ... or person acting under him.’ ” Id. (quoting 28 U.S.C. § 1442(a)(1)).
There is no question that the Lovell decision conflicts with this court’s earlier interpretation of section 1442(a)(1). Although there was support for the reading this court gave that section, see 14A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3727, at 457 (2d ed. 1985) [hereinafter C. Wright], that interpretation was based more on policy and congressional purpose than on plain language. The unfortunate result of the Third Circuit’s reading of section 1442(a)(1) is that it prevents in most instances the United States and its agencies from removing an action against them to federal court when they are named as a third-party defendant. As in this case, a claim asserted against a federal agency often arises under federal law. If an agency is a direct defendant and the claim arises under federal law, that agency can remove pursuant to the general removal statute, 28 U.S.C. § 1441(a), because a district court would have had original jurisdiction over the claim pursuant to 28 U.S.C. § 1331. However, only a direct defendant (and not a third-party defendant or an involuntary plaintiff) can remove under section 1441(a). See 14A C. Wright, supra, § 3731. In a case such as this, therefore, a federal agency defendant must either find another applicable removal provision or must defend against a federal claim in state court.
The court finds that the Third Circuit’s reading of section 1442(a)(1) cannot have retrospective application to this lawsuit. As a general rule, a controversy must be decided “on the law as exists at the time the appellate court considers the case, although that law may differ from the one in force at the time the trial court decided the matter or at the time the events sparking the litigation occurred.” Hill v. Equitable Trust Co., 851 F.2d 691, 695 (3d Cir.1988), cert. denied, — U.S. -, 109 S.Ct. 791, 102 L.Ed.2d 782 (1989). That general rule stems from the view that *334 the role of courts is to interpret the law rather than make it, that is, to tell the world what the law is rather than what it will be. There are, however, exceptions to the general rule based on the notion that judges indeed make law and that in some cases retrospective application of a new rule has unjust consequences. See id. The Supreme Court has established three requisites for applying a decision only prospectively:
(1) The holding must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed;
(2) The merits and demerits in each case must be weighed by looking to the history of the rule, its purpose and effect, and whether retrospective operation will further or retard the rule’s operation; [and]
(3) Retrospective application must create the risk of producing substantially inequitable results.
Id. at 696 (citing Chevron Oil Co. v. Hudson, 404 U.S. 97, 106-07, 92 S.Ct. 349, 355-56, 30 L.Ed.2d 296 (1971)).
Applying the Hudson factors to the present case, it becomes clear that the Lovell court’s reading of section 1442(a)(1) should not apply retrospectively to unwork this court’s June 1985 holding that EPA properly removed this case. First, the Lovell court ruled on an issue of first impression in this circuit, the resolution of which was far from clearly foreshadowed. As that court stated, courts have split on the appropriate reading to give to section 1442(a)(1). See 843 F.2d at 733 n. 11. Although the panel explained that the weight of authority supported its narrow reading of the statute, see id., that choice was not clear from prior precedent. In fact, the parties in this case did more than rely on their fair reading of the law; they relied on this court’s decision broadly interpreting section 1442(a)(1). Second, the purpose of the rule that the Lovell court announced is to restrict the federal-officer removal statute to what that court found to be Congress’s intent. Retrospective application would not further the purpose of the rule. The only thing to be gained by declaring that this lawsuit was not properly removed would be vindication of Congressional intent; it would in no way promote future adherence to that intent. Finally, retrospective application would produce substantially inequitable results in some instances, and this case is a paradigm of such an instance. Literally hundreds of parties have relied on this court’s reading of the law and have invested hundreds of thousands of dollars in litigating this case in federal court. Retrospective application would return this litigation to another court and would render futile much of the effort expended by the parties in this court. The Third Circuit’s Lovell decision therefore does not bind the court in this case.
It is of no concern to this court that the Lovell court did not address the question of retrospective application of its reading of section 1442(a)(1). That reading was only dicta, or, at most, an alternative holding. After the appeals court concluded that section 1442(a)(1) must be read to prevent agencies from invoking it, it went into a lengthy analysis of why it lacked jurisdiction under that section even if Eximbank properly removed the case under section 1442(a)(1) as a federal agency. See id. at 733-35.
2. The Court Properly Maintained Jurisdiction After it Dismissed EPA
When an action is properly removed pursuant to section 1442(a)(1), a federal court can exercise ancillary jurisdiction over the entire controversy. 14A C. Wright, supra, § 3727, at 462. If a court dismisses the federal defendant from such a case, it must use its discretion to decide whether to remand the remaining ancillary claims to state court or to maintain jurisdiction over those claims. Id.; see, e.g., District of Columbia v. Merit Sys. Protection Bd., 762 F.2d 129, 133 (D.C.Cir.1985); Spencer v. New Orleans Levee Bd., 737 F.2d 435, 438 (5th Cir.1984); IMPC Professional Servs., Inc. v. Latin Am. Home Health, Inc., 676 F.2d 152, 160 (5th Cir.1982); Watkins v. Grover, 508 F.2d 920, *335 921 (9th Cir.1975). There is, however, an exception to this rule: “if the principal claim is dismissed because there was never jurisdiction over it, then the ancillary claim must likewise be dismissed as never having been within the court’s jurisdiction.” IMPC Professional Servs., 676 F.2d at 159 n. 12; accord National Research Bureau, Inc. v. Bartholomew, 482 F.2d 386, 388 (3d Cir.1983).
This case does not fall into the subject-matter-jurisdiction-dismissal exception to the ancillary jurisdiction rule. The court dismissed EPA from this action because sovereign immunity barred the claim against it. A sovereign immunity defense is something more than a claim of no subject matter jurisdiction. When a court passes on a defense of sovereign immunity, it determines whether the government is subject to suit in any court, not just federal court. “Sovereign immunity is not a jurisdictional defense.” 1A J. Moore & B. Ringle, Moore’s Federal Practice 110.169[1], at 681 n. 16 (2d ed. 1986) [hereinafter J. Moore] (emphasis in original); accord KCPO Employees Credit Union v. Mitchell, 421 F.Supp. 1327, 1328 (W.D.Mo. 1976). Consequently, EPA filed its motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) (failure to state a claim upon which relief can be granted) rather than Fed.R.Civ.P. 12(b)(1) (lack of subject matter jurisdiction). This court’s decision dismissing the Township of Gloucester’s claim against EPA went beyond the threshold federal jurisdiction issue and therefore the court properly maintained ancillary jurisdiction over the remaining state law claims.
The New Holland defendants argue in part that this court abused its discretion by retaining jurisdiction in 1985. In support, they invoke Lovell Mfg. v. Export-Import Bank of the U.S., 843 F.2d 725 (3d Cir.1988), for the proposition that “once all federal claims have been dropped from a case, the case simply does not belong in federal court.” Id. at 734. The Lovell court explained, “Absent ‘extraordinary circumstances,’ a district court in this circuit is powerless to hear claims lacking an independent jurisdictional basis, and ‘time already invested in litigating the state cause of action is an insufficient reason to sustain the exercise of pendent jurisdiction.’ ” Id. at 735 (quoting Weaver v. Marine Bank, 683 F.2d 744, 746 (3d Cir.1982)). The court must reject this argument because there are extraordinary circumstances in this case. The court will examine these circumstances as it reaches the question of whether it can exercise pendent party jurisdiction over the New Holland defendants. See infra section II.B.l.
B. The Court Has Subject Matter Jurisdiction Over Claims Against Parties Added to this Lawsuit Subsequent to EPA’s Dismissal
The New Holland defendants argue that by hearing DEP’s claims against them the court is improperly exercising pendent party jurisdiction. See Aldinger v. Howard, 427 U.S. 1, 15, 96 S.Ct. 2413, 2420, 49 L.Ed.2d 276 (1976) (In some instances “the addition of a completely new party would run counter to the well-established principle that federal courts, as opposed to state trial courts of general jurisdiction, are courts of limited jurisdiction marked out by Congress.”), overruled on other grounds, Monell v. New York City Dep’t of Social Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Their position essentially amounts to little more than this: A federal court, having dismissed the federal defendant from an action removed to it from state court in its entirety pursuant to 28 U.S.C. § 1442(a)(1), can continue to adjudicate the dispute but cannot permit the plaintiff to add any additional parties. The argument, then, poses the question of whether the court can add a pendent party when the only basis for federal jurisdiction over the case is a lingering ancillary claim.
Pendent party jurisdiction over the New Holland defendants is appropriate in this case. Such jurisdiction involves “the addition of a party which is implicated in the litigation only with respect to the pendent state law claim and not also with respect to any claim as to which there is an independent basis of federal jurisdiction.” Moor v. County of Alameda, 411 U.S. 693, *336 713, 93 S.Ct. 1785, 1797, 36 L.Ed.2d 596 (1973). See generally 13B C. Wright, supra, § 3567.2. The courts of appeals are divided on the availability of pendent party jurisdiction, and the Third Circuit has not yet decided the question. See Lovell Mfg. v. Export-Import Bank of the U.S., 843 F.2d 725, 732 (3d Cir.1988); see also Liberty Mutual Ins. v. Insurance Corp. of Ireland, Ltd., 693 F.Supp. 340, 345-49 (W.D.Pa.1988) (discussing availability of pendent party jurisdiction in the Third Circuit). In this case the situation varies from the usual application of pendent jurisdiction because the plaintiff has not asserted federal claims against any party. The case is in this court because a one-time federal defendant removed. The distinction makes the jurisdiction over additional defendants ancillary rather than pendent, but it is of little significance because both jurisdictional doctrines require essentially the same analysis. See Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 372-73, 98 S.Ct. 2396, 2401-02, 57 L.Ed.2d 274 (1978).
Two requirements for the exercise of pendent jurisdiction have been clear since the Supreme Court decided United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966): First, the court must determine whether it has constitutional power to exercise jurisdiction; second, it must determine whether it should, in its discretion, exercise jurisdiction. Id. at 726, 86 S.Ct. at 1139. See generally 13B C. Wright, supra, § 3567.1. The Aldinger Court added a third step to the two-step pendent claim inquiry: Now a court deciding whether to exercise pendent party jurisdiction must also determine whether the statute conferring jurisdiction either expressly or implicitly negates jurisdiction over a pendent party. 427 U.S. at 17-18. The court will now turn to the Gibbs/Aldinger analysis by first addressing the questions of power and discretion and then examining the jurisdictional statute at issue in this case.
1. Constitutional Power
For a federal court to have the power under U.S. Const, art. Ill to hear a state law claim pendent to a federal claim,
The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal style or character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, ... there is power in federal courts to hear the whole.
Gibbs, 383 U.S. at 725, 86 S.Ct. at 1138 (emphasis in original). Where a claim is ancillary to a lawsuit rather than pendent to a federal claim, a similar power requirement applies:
The general rule is that when a federal court has properly acquired jurisdiction over a cause, it may entertain, by intervention, dependent or ancillary controversies; but no controversy can be regarded as dependent or ancillary unless it has direct relation to property or assets actually or constructively drawn into the court’s possession or control by the principal suit.
Aldinger, 427 U.S. at 11-12, 96 S.Ct. at 2418-2419 (quoting Fulton Bank v. Hozier, 267 U.S. 276, 280, 45 S.Ct. 261, 262, 69 L.Ed. 609 (1925)). Consequently, article III gives the court power to hear the DEP’s claims against the New Holland defendants if those claims derive from a common nucleus of operative fact with (or, put another way, bear a direct relation to) the federal law issue that was once part of this case.
The pendent claims in this case arise out of the same facts as the claims on which federal jurisdiction was first predicated. As set out at length above, this case arrived in this court when EPA removed it here pursuant to 28 U.S.C. § 1442(a)(1). The Township of Gloucester impleaded EPA, asking the court to declare that the federal agency had to bring its claims against the Township in this action in conjunction with DEP’s related state law claims. The Township in essence sought a declaration of its liability under CERCLA. Reworking the positions of the parties to reflect their true interests, EPA was an unwilling plaintiff suing the Township and other defendants under federal environ *337 mental laws. DEP’s claims, the claims brought into this court along with the claim against EPA, are an attempt to sue the Township and other defendants under New Jersey environmental laws. All claims relate to the same alleged activities regarding dumping toxic waste at the GEMS landfill, and therefore the court has the power to resolve all state and federal claims in this lawsuit.
This case adds an additional wrinkle to the usual analysis, for here the plaintiff has added state law claims against new defendants after the court dismissed EPA from the lawsuit. This wrinkle, however, has no effect on the court’s constitutional power to add a new party. It follows a fortiori from Gibbs that once federal jurisdiction vests in a federal court through either ancillary or pendent jurisdiction, the court can constitutionally hear any claim that stems from a nucleus of operative fact common to that claim and the claims over which it has jurisdiction. Now that the court has determined that article III permits it to hear DEP’s claims against the New Holland defendants, it must turn to the question of whether it can exercise its discretion to do so.
2. Judicial Discretion
The power and discretion points of the Gibbs analysis are not completely distinct. The Gibbs Court explained that a federal court need not exercise its power to maintain pendent jurisdiction “in every case in which it is found to exist— Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.” 383 U.S. at 726, 86 S.Ct. at 1138. However, the Supreme Court has
[m]ore recently ... made clear that this statement does not establish a mandatory rule to be applied inflexibly in all cases. The statement simply recognizes that in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine— judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims.
Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 108 S.Ct. 614, 719 n. 5, 98 L.Ed.2d 720 (1988). As explained above, see supra section II.A.2, the Third Circuit has given a strong reading to the language set out above from Gibbs, and it requires a district court to find “extraordinary circumstances” before it can properly exercise its discretion to hear pendent claims once the basis for federal jurisdiction disappears. See Lovell Mfg. v. Export-Import Bank of the U.S., 843 F.2d 725, 734-35 (3d Cir.1988); Tully v. Mott Supermarkets, Inc., 540 F.2d 187, 196 (3d Cir.1976); see also Shaffer v. Board of School Directors, 730 F.2d 910, 912-13 (3d Cir.1984) (“Shaffer II”); Shaffer v. Board of School Directors, 687 F.2d 718, 722-23 (3d Cir.1982) (“Shaffer I”), cert. denied, 459 U.S. 1212, 103 S.Ct. 1209, 75 L.Ed.2d 449 (1983); Weaver v. Marine Bank, 683 F.2d 744, 746 (3d Cir.1982). The reading is arguably too narrow, see Weaver, 683 F.2d at 750 (Sloviter, J., dubitante), but this court is nonetheless bound by it.
The court has previously indicated its intent to exercise its discretion to maintain jurisdiction. The only inquiry here, therefore, is whether the New Holland defendants have raised doubts as to whether the court can properly exercise its discretion to do so. The court’s purpose in maintaining jurisdiction was to prevent a litigation merry-go-round wherein parties would, after remand, add federal claims or defendants, and the case would once again return to federal court. In fact, several defendants again attempted to join EPA in this action in 1987. See New Jersey Dep’t of Envtl. Protection v. Gloucester Envtl. Management Servs., Civil Action No. 84-152, slip op. (D.N.J. Aug. 10, 1987) (denying joinder of EPA). The threat of repeated petitions for removal combined with the particular federal claims asserted in the case constitute the “extraordinary circumstances” necessary for this court to exercise its discretion to maintain jurisdiction. Dismissal or remand at this stage of the litigation would cause tremendous further delay, and that delay would severely prejudice the *338 parties seeking to resolve this matter. See Shaffer II, 730 F.2d at 912 (To determine whether there exist extraordinary circumstances, “district court should focus on prejudice to the plaintiffs resulting from possible delays in adjudicating their state law claims, rather than the investment of time already devoted to the federal court lawsuit.”); Shaffer I, 687 F.2d at 723 (Prejudice sufficient to constitute “extraordinary circumstances” would arise “by virtue of the fact that a new lawsuit in a state court could not be pleaded and decided in time to benefit kindergarten enrolles in the coming school year.”). The federal claims in this case having the greatest significance to the court’s finding of extraordinary circumstances are those arising under CERCLA because those claims give the court exclusive original jurisdiction. This is the only forum in which all claims arising from the joint state and federal effort to force potentially responsible parties to cleanup the GEMS landfill can be resolved.
The Township of Gloucester’s 1985 amended counterclaim, cross-claim, and third-party complaint included direct claims and claims for contribution under CERCLA. Specifically, the Township invoked section 107 of CERCLA, 42 U.S.C. § 9607. That complaint also anticipated a new provision added to CERCLA with the Superfund Amendments and Reauthorization Act of 1986 (“SARA”), Pub.L. No. 99-499, 100 Stat. 1613. That provision, adding to section 113 of CERCLA, states:
Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 or section 9607 of this title.
42 U.S.C.A. § 9613(f)(1) (West Supp.1989) (emphasis added). The following provision is also relevant in light of the recent phase-one settlement in this case:
A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not a party to a settlement____
Id. § 9613(f)(3)(B). Jurisdiction over CERCLA/SARA claims and cross-claims lies exclusively in this court. Id. § 9613(b).
The New Holland defendants attempt to diminish the importance of the CERCLA/SARA claims to this court’s decision to retain jurisdiction over this action. Those defendants argue that no contribution right can accrue under section 113(f) until some party brings a lawsuit pursuant to CERCLA § 106 or 107. They argue that section 113(f) specifically limits a contribution claim to the time during or following any direct CERCLA civil action. They explain that section 113(f)(l)’s final sentence, emphasized above, refers only to state law contribution claims. The court emphatically disagrees. The purpose of section 113(f) is to permit claims for contribution against “any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title.” 42 U.S.C.A. § 9613(f)(1). Section 106 of CERCLA provides for administrative as well as judicial action, id. § 9606(a), and the only conceivable reading of section 113(f)(1) is that a party can bring a contribution action during or after the pendency of a section 106 administrative action. To read that section otherwise would render superfluous section 113(f)(3)(B), which allows a settling party in an administrative action to seek contribution. The court also notes that the limitations period for a contribution period bars a contribution action filed more than three years after, inter alia, “the date of an ad *339 ministrative order ... or entry of a judicially approved settlement with respect to such costs or damages.” 42 U.S.C.A. § 9613(g)(3). The New Holland defendants contend that only a few defendants have actually filed cross-claims for contribution; however, they neglect to note that Case Management Order No. 5 provides that such claims are automatically deemed asserted and denied by all defendants.
The New Holland defendants correctly state that the various defendants’ assertion of federal cross-claims is not sufficient to provide subject matter jurisdiction over a plaintiff’s state law claims. However, contrary to their argument, the court’s decision today need not rely on such a proposition. The court invokes those cross-claims only to support its exercise of discretion and not to provide constitutional power to hear this case. As explained above, the removal statute and a federal question deriving from a nucleus of operative fact shared in common with DEP’s state law claims provided that power. The existence of CERCLA exclusive-jurisdiction contribution claims and the danger of a litigation merry-go-round in which no court might ever reach the merits of the substantive claims in this action render this one of those unique cases in which a court can properly exercise its discretion to retain jurisdiction after dismissing the claim or party providing federal jurisdiction.
EPA and DEP are both pursuing the interests of their governments under those governments’ respective environmental laws. EPA has chosen to permit DEP to pursue this litigation while it limits itself to the administrative process. That choice, however, does not deprive the respondents to its administrative order from a federal forum in which to assert their CERCLA contribution claims. Given the unique circumstances of this case, the only way to resolve this litigation in a timely fashion and in a single forum is for this court to continue to exercise jurisdiction. Moreover, it follows a fortiori that, if extraordinary circumstances exist to permit the court to exercise its discretion to maintain jurisdiction after dismissing EPA, those same circumstances allow it to take jurisdiction over new parties added as the litigation progresses. There would be little utility to maintaining jurisdiction in a case like this if the court could not allow litigants to pursue information learned through discovery and to add newly discovered possible defendants as parties. In addition, the court can conceive of no principled distinction between bringing a pendent party into a lawsuit before the court dismisses the federal defendant and doing so after the court dismisses that defendant. Whether the court can exercise pendent party jurisdiction over a pendent party cannot turn on the fortuity of whether that party came into the lawsuit before or after the court dismissed the federal defendant. In sum, the existence of extraordinary circumstances render proper the court’s discretionary decision to retain jurisdiction after dismissing EPA. The court must now turn to the question of whether Congress has empowered it to do so.
3. The Jurisdictional Statute
The Supreme Court’s decision in Aldinger v. Howard, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), overruled on other grounds, Monell v. New York City Dep’t of Social Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), adds a third inquiry when a court considers asserting pendent jurisdiction over a nonfederal claim against a party who, but for that claim, would not be in the lawsuit. The court must now determine from the relevant jurisdictional statute and the common law surrounding it whether Congress manifested an intent to prohibit federal courts to entertain such a claim against a pendent party. See id. at 18 (court must satisfy itself “that Congress in the statutes conferring jurisdiction has not expressly or by implication negated its existence”); see also Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978) (“[Tjhere must be an examination of the posture in which the nonfederal claim is asserted and of the specific statute that confers jurisdiction over the federal claim, in order to determine whether ‘Congress in [that statute] has ... expressly or by implication negat *340 ed’ the exercise of jurisdiction over the particular nonfederal claim.”) (quoting Aldinger, 427 U.S. at 18, 96 S.Ct. at 2422). See generally Note, A Closer Look at Pendent and Ancillary Jurisdiction: Toward a Theory of Incidental Jurisdiction, 95 Harv.L.Rev. 1935, 1941-46 (1982). The court must first look to the language of the statute conferring jurisdiction, but that cannot be its only inquiry. As the Aldinger Court explained,
There are, of course, many variations in the language which Congress has employed to confer jurisdiction upon the federal courts, and we decide here only the issue of so-called “pendent party” jurisdiction with respect to a claim brought under §§ 1343(3) and 1983. Other statutory grants and other alignments of parties and claims might call for a different result. When the grant of jurisdiction to a federal court is exclusive, for example, as in the prosecution of tort claims against the United States under 28 U.S.C. § 1346, the argument of judicial economy and convenience can be coupled with the additional argument that only in a federal court may all of the claims be tried together.
427 U.S. at 18, 96 S.Ct. at 2422 (emphasis in original). The court will therefore proceed by analyzing the language of the jurisdictional statute applicable in this case, 28 U.S.C. § 1442(a)(1), and then by analyzing the alignment of the parties.
Although EPA’s removal petition failed to specify which removal provision it relied upon, the court has previously found 28 U.S.C. § 1442(a)(1) to be the relevant provision. That section states:
(a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
(1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under
any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.
28 U.S.C. § 1442(a). The Supreme Court has recently explained the function of this section:
Section 1442(a), in our view, is a pure jurisdictional statute, seeking to do nothing more than grant district court jurisdiction over cases in which a federal officer is a defendant. Section 1442(a), therefore, cannot independently support Art. Ill “arising under” jurisdiction. Rather, it is the raising of a federal question in the officer’s removal petition that constitutes the federal law under which the action against the federal officer arises for Art. Ill purposes. The removal statute itself merely serves to overcome the “well-pleaded complaint” rule which would otherwise preclude removal even if a federal defense were alleged.
Mesa v. California, — U.S.-, 109 S.Ct. 959, 968, 103 L.Ed.2d 99 (1989). Although the statute does not explicitly state that a federal defendant can remove an entire action, courts and commentators have read it as doing so. See, e.g., IMFC Professional Servs. v. Latin Am. Home Health, Inc., 676 F.2d 152, 158-59 (5th Cir.1982); Springer v. Seaman, 658 F.Supp. 1502, 1511 n. 9 (D.Me.1987); National Audubon Soc. v. Department of Water & Power, 496 F.Supp. 499, 509 (E.D.Cal.1980); 1A R. Moore, supra, ¶ 0.164[1], at 385-87; 14A C. Wright, supra, § 3727, at 463.
If Congress contemplated that a federal defendant could remove an entire action, it necessarily considered that some of the parties brought into federal court would be there only to answer to state law claims. Accordingly, the court finds no indication of congressional intent to negate federal court jurisdiction over removed state law claims against pendent parties. The obvious policy underlying the statute is to allow a federal defendant asserting a federal defense broad access to a federal forum. Moreover, the court finds no indication in the statute or in the common law interpret *341 ing it that Congress intended to foreclose further litigation once the court dismissed the claims against the federal defendant. For the same reasons that Congress did not make clear that federal jurisdiction ends when the federal defendant leaves case, the court finds no outright prohibition in the statutory language or the common law surrounding it against adding a pendent party at some point after dismissing the federal defendant.
The Aldinger Court also suggested that a federal court determining whether it can assert pendent party jurisdiction should examine the alignment of the parties. See 427 U.S. at 18, 96 S.Ct. at 2422. Where the plaintiff chooses a federal forum, she has made a conscious choice and must live with the limitations of that forum. However, where a defendant lands in federal court by plaintiffs choice, the court must permit him latitude in bringing his pendent and ancillary claims in that forum. See Owen, 437 U.S. at 376, 98 S.Ct. at 2404; see also Note, supra, at 1944. In this case, EPA removed to federal court. EPA was technically a third-party defendant, but in reality was an involuntary plaintiff. To some extent its interests and DEP’s interests were aligned. However, their interests differed as to choice of forum for this lawsuit. DEP filed this litigation in state court, and had no right to object when EPA chose to remove. Consequently, DEP is in a defensive posture in the sense that it has not selected this federal forum. The court should therefore give DEP more latitude to assert its pendent state law claims than it could had it filed its lawsuit in this court as an initial matter. The fact that DEP has not actively sought remand and now argues that the court should retain jurisdiction has no bearing on this conclusion. DEP’s interest in remaining in federal court is a practical one: It hopes not to lose the effort it has put into litigating the case in this court. The court cannot perceive any motive on DEP’s part to remain in this forum to gain a tactical advantage.
Another circumstance that bears on this court’s analysis under Aldinger is the existence of several federal claims in this lawsuit. Several parties have asserted claims pursuant to CERCLA/SARA, and that statute vests this court with exclusive original jurisdiction over any claims arising under it. See 42 U.S.C. § 9613(b); see also supra section II.B.2. This case will be in this court whether or not the court now dismisses or remands DEP’s claims because defendants seeking to assert CERCLA/SARA cross-claims will have to file them here. Although the court cannot look to these cross-claims to find a source of jurisdiction over this entire case, it can consider the existence of those cross-claims and CERCLA/SARA exclusive-jurisdiction provision in evaluating whether jurisdiction here would be contrary to the congressional policy underlying the federal-defendant removal statute. The existence of such claims supports the court’s reading of section 1442(a)(1) to allow pendent party jurisdiction in this case.
Considering the absence of congressional intent to deny jurisdiction over DEP’s claims against the New Holland defendants, DEP’s defensive posture in selecting a federal forum, and the exclusive-jurisdiction federal claims in this litigation, the court finds that pendent party jurisdiction exists over DEP’s state law claims.
III. CONCLUSION
This court has subject matter jurisdiction over this entire litigation, including DEP’s claims against the New Holland defendants. EPA properly removed this case to federal court. After the court dismissed EPA, it found that it could and should retain jurisdiction over the remainder of the case. The present motion in part asks the court to reconsider that ruling in light of recent developments in the law. However, the court finds that it properly maintained federal jurisdiction in 1985. In addition, the motion now before the court asks it to examine the propriety of exercising pendent party jurisdiction over the New Holland defendants. The court finds that it has the constitutional power to do so and that it can and should exercise its discretion to do so. Furthermore, after examining the language of the statute providing this court with jurisdiction and evaluating *342 the unique circumstances in this litigation, the court finds that it can exercise jurisdiction in this case. The court will therefore deny the New Holland defendants’ motion to dismiss.
An appropriate order will be entered.